John F. Kurnick and Celia Kurnick, Husband and Wife v. Commissioner.
Kurnick v. Commissioner
Docket No. 45833.
United States Tax Court
T.C. Memo 1955-31; 1955 Tax Ct. Memo LEXIS 316; 14 T.C.M. (CCH) 106; T.C.M. (RIA) 55031; January 31, 1955
*316 Petitioners' books and their returns prepared therefrom for the years 1943 to 1947, inclusive, showed gross profit margins on retail liquor sales substantially less than the average for similar retail liquor dealers in Michigan. The dealers' purchase and selling prices of liquor were set by the State Liquor Commission. Petitioners' gross profit margin on other merchandise (beer, wine, tobaccos, magazines, and incidental groceries) as reported on their returns for 1948 to 1950, inclusive, and as shown on their books, was substantially less than in earlier years and substantially below the average margin which respondent determined such dealers should realize. Respondent, by use of the percentage markup method, determined that petitioners received substantial amounts of additional income in each of the years 1943 to 1950, inclusive. 1. Held, petitioners received substantial amounts of additional unreported income during each of the years 1944 to 1950, inclusive. 2. Held, further, the deficiencies resulting therefrom for such years were due in part to fraud with intent to evade tax. 3. Held, further, section 3631 of the Internal Revenue Code of 1939 does not invalidate the respondent's *317 determination of a deficiency and penalty for 1944. J. P. Mikesell, Esq., and E. Reed Hunt, Esq., 2264 Penobscot Building, Detroit, Mich., for the petitioners. Robert J. Fetterman, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in taxes and penalties, determined by respondent, as follows: Section 293(b)
Year
Tax
Deficiency
Penalty
1943
Income and
Victory
$ 461.77
$ 230.89
1944
Income
2,318.06
1,566.23
1945
Income
2,590.04
1,295.02
1946
Income
1,819.35
909.68
1947
Income
1,627.61
813.81
1948
Income
726.36
363.18
1949
Income
1,448.92
724.46
1950
Income
876.44
438.22
The issues raised are: (1) whether petitioners received additional unreported income from the operation of a beer and liquor store during each of the years in issue; (2) whether the deficiencies were due to fraud with intent to evade tax; (3) if not, whether assessment of the deficiency for any year is barred by the statute of limitation; and (4) whether respondent was barred from examining petitioners' books and records for 1943 and 1944, and from determining deficiencies *318 for those years because of section 3631 of the Internal Revenue Code of 1939. [1] Other adjustments, raised in the pleadings, are deemed to be conceded by petitioners since no evidence was offered concerning them, and they were not discussed on brief. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. John F. Kurnick and Celia Kurnick were husband and wife and residents of Detroit, Michigan, during all of the years here in issue. They filed a joint Federal income and victory tax return for the calendar year 1943, and joint income tax returns for the remaining calendar years in issue, with the collector of internal revenue for the district of Michigan. Petitioner married Celia Kurnick in 1919, and of *319 such marriage four children were born. In 1935 petitioners purchased some equipment and began operating an ice cream fountain. The following year they moved to a new location and began operating a beer store. They subsequently obtained a liquor license. Celia worked in the store during the day, throughout the years in issue, and petitioner operated it during the evening. His son, Richard, managed the store in 1948 and subsequent years. In addition to liquor, petitioners sold beer, wines, magazines, tobaccos, and some grocery items. They kept books on which were recorded, separately from all other items, the purchases and sales of liquor. Their tax returns were prepared from such books. There were at least two cash registers in the store, one of which was used exclusively for liquor sales. The registers had no tapes but did have totalizers. Both the wholesale and retail sale of liquor in Michigan is controlled by the Michigan Liquor Control Commission (hereinafter referred to as the Commission). The type of retail store which petitioners operated is designated by the Commission as "Specially Designated Distributors" or "SDD's". The retail price at which such stores sell liquor *320 is set by the Commission, and all purchases of liquor must be made from the State. From 1942 to July 1947, such stores throughout the State realized an average gross profit of 8.15 per cent on total purchases; and, after July 1947, such average gross profit increased to 11.11 per cent of purchases. During the first four years here in issue, the supply of higher grade whiskies was scarce. Retail dealers in Michigan, such as petitioners, stocked inferior merchandise and many whisky substitutes, such as cordials, rums, and brandies, which sold slowly. The Commission frequently ordered price decreases in such merchandise as the supply of better whiskies became more plentiful. Price decreases resulted in little or no profit on the item so affected and, in some instances, actually resulted in a loss. Shown below are petitioners' purchases and sales of liquor and other items, the gross profit realized, and the percentage of gross profit to purchases, as compiled from petitioners' books: Opening
Closing
Gross
Year
Purchases
Sales
Inventory *
Inventory *
Profit *
LIQUOR
1943
$ 49,310.14
$ 48,817.61
$ 2,987.36
$ 4,037.26
$ 557.37
1944
1945
70,176.19
69,573.95
3,906.93
4,918.39
409.22
1946
63,353.35
62,530.34
4,918.39
3,464.17
(2,277.23)
1947
57,458.32
57,145.34
3,464.17
4,260.89
483.74
1948
51,437.93
53,897.94
4,260.89
6,346.61
4,545.73
1949
127,478.12
128,389.16
6,346.61
14,901.65
9,466.08
1950
209,076.51
240,638.87
14,901.65
7,301.09
23,961.80
OTHER MERCHANDISE
1943
$ 36,133.11
$ 44,962.99
$ 8,829.88
1944
1945
29,306.71
35,858.99
6,552.18
1946
29,338.15
37,507.31
8,169.16
1947
27,298.45
32,729.54
5,431.09
1948
24,519.07
27,179.55
2,660.48
1949
33,081.57
33,436.95
355.38
1950
41,010.52
46,551.75
5,541.23
*321 Percentage of
Gross Profit
Year
to Purchases
LIQUOR
1943
1.15
1944
1945
.59
1946
1947
.85
1948
9.2 1949
7.9 1950
11.  OTHER MERCHANDISE
1943
24.4
1944
1945
22.4
1946
27.8
1947
19.8
1948
10.8
1949
1.1
1950
13.5
Set forth below are the total purchases of liquor which petitioners made from the Liquor Commission during the years in issue: Year
Amount
1943
$ 46,978.20
1944
58,867.08
1945
70,169.18
1946
65,161.04
1947
57,346.45
1948
52,410.13
1949
126,570.16
1950
209,076.53
On their return for 1944, petitioners reported total purchases of liquor and all other merchandise of $95,935.85, and opening and closing inventories of $4,037.26 and $3,771.14, respectively. Their books for that year had been destroyed by rats prior to the investigation of the returns. Respondent determined that petitioners received additional *322 gross income from the liquor store on the assumption that the gross profit on liquor purchased was 10 per cent and the gross profit on all other merchandise purchased was 22 per cent. In determining such additional gross income, the inventories shown on petitioners' returns were assumed to be the inventory for liquor only; the amount of liquor purchased, used in the determination, was the amount as shown on the books of the Commission, and that amount was subtracted from total purchases shown on petitioners' returns to determine the amount of purchases of all other merchandise. The inventory of such other merchandise was assumed to have been constant throughout all the years. The additional amounts of income which respondent so determined petitioners received were as follows: Additional Income
Understate-
Year
Reported
Adjusted
ment
1943
$ 907.00
$ 2,673.21
$ 1,766.21
1944
3,780.24
10,234.20
6,453.96
1945
3,447.35
10,418.26
6,970.91
1946
3,652.44
9,498.49
5,846.05
1947
3,036.27
8,608.30
5,572.03
1948
3,979.88
7,154.60
3,174.72
1949
4,869.27
10,830.02
5,960.75
1950
14,763.36
17,738.72
2,975.36
Total
$38,719.99
*323 Petitioners received additional unreported income from their liquor store during the years in issue as follows: Year
Additional Income
1943
0
1944
$4,811.68
1945
4,346.27
1946
5,758.68
1947
4,133.67
1948
3,024.16
1949
3,791.05
1950
2,975.36 Petitioners reported a gross profit of $12,035.43 on their return for 1943 which included income of unknown amount from a gas station. Respondent's records do not show that any investigation of petitioners' books and records for 1943 and 1944 was made in connection with an adjustment in their return for 1944, prior to the investigation and determination of the deficiencies in issue. A part of the deficiencies for each of the years 1944 to 1950, inclusive, was due to fraud with intent to evade tax. Opinion RICE, Judge: The petitioners argue that the respondent's determination of the deficiencies here was arbitrary, citing Helvering v. Taylor, 293 U.S. 507 (1935), because they maintained books for their liquor store and correctly recorded thereon all purchases and sales, and their returns were prepared on the basis of their books which accurately reflected their income. The fact which prompted *324 the respondent's investigation of petitioners' income was that the gross profit reflected on their returns was significantly less than that realized by similar retail liquor stores throughout the State. The record discloses that retail dealers such as petitioners, designated by the Commission as SDD's, realized an average gross profit of 8.15 per cent on purchases from 1943 to July 1947, and 11.11 per cent thereafter. Petitioners showed a gross profit of not more than 1.15 per cent from 1943 to 1947, inclusive. Thereafter in 1948, 1949, and 1950, they showed a gross profit on liquor of 9.2 per cent, 7.9 per cent, and 11 per cent, respectively. The respondent determined that the gross profit realized on purchases of all other merchandise which petitioners sold should have been at least 22 per cent. No evidence is found in the record to contradict that determination. The petitioners showed a gross profit on all other merchandise of from 19.8 per cent to 27.8 per cent during the years 1943 to 1947, inclusive. Thereafter in 1948, 1949, and 1950, they showed a gross profit on such merchandise of 10.8 per cent, 1.1 per cent, and 13.5 per cent, respectively. Petitioners attempted to explain *325 the wide disparity in the gross profit realized by them on liquor and that realized, on the average, by similar dealers as being attributable to breakage, theft, and large stocks of inferior liquors which moved slowly and which eventually were sold at little or no profit or at a loss. The price at which petitioners and similar dealers purchased and sold liquors was controlled by the State Commission. The actual selling price was set by it, as distinguished from a pricing system where a regulatory body sets a floor or ceiling price, or both, between which a free market is permitted to operate. As indicated by our findings, the Commission did decrease prices on inferior and slow moving liquors as better whiskies became more abundant. Such decreases resulted in little or no profit being realized by the dealers or, in some instances, in actual losses. This factor, however, was considered by the Commission in computing the average gross profit margins which dealers realized during the years in issue. Petitioners have failed to show that they possessed such large stocks of liquors on which price decreases were authorized that their gross profit margin on liquor would have dropped to the *326 levels indicated by their books. They likewise failed to show that losses because of theft or breakage would be more than a negligible amount. An SDD store operator, whom petitioners called as a witness, substantiated the fact that during the war years there was a scarcity of good liquors, that dealers had to stock inferior grades and substitutes, and that price decreases authorized by the Commission resulted in little or no profit on many of such items, or sometimes in an actual loss. This dealer further testified, however, that his gross profit on liquor, considering price decreases, thefts, breakages, etc., had been 6.5 per cent from 1943 to July 1946, and had risen to 8 per cent or 8.5 per cent thereafter. The respondent determined that petitioners had received additional gross income by applying a 10 per cent markup on liquor purchases, after making adjustments thereof to reflect inventory variations. We do not believe petitioners realized so high a margin of gross profit on liquor purchases. However, as indicated by our findings, we are satisfied after a thorough study of the entire record that they realized a margin of profit on liquor for the years 1944 to 1947, inclusive, *327 substantially in excess of that shown on their books and that such books and the returns prepared therefrom did not correctly reflect their income for such years. While we are satisfied that petitioners did not report the full amount of income received from the sale of liquor in 1943, their return for that year shows a gross profit of $12,035.43. That sum includes income from a gas station, but the amount thereof is not known. On the basis of our computation, however, we have not found that petitioners' gross income from the liquor store was in excess of $12,035.43; and, hence, we do not find a deficiency for that year. The petitioners offered no satisfactory explanation for the sharp decline in the margin of profit which they realized on other merchandise sold by them during the last three years in issue. We are satisfied that their gross profit on such merchandise for those years was much greater than they reported; and, we have found that they realized additional income therefrom, not shown on their books or reported on their returns. We appreciate the possible margin of error in the percentage markup method of reconstructing a taxpayer's income. The possible margin of error *328 here, however, is much less than where a taxpayer is buying and selling merchandise on a free market, because both the price at which petitioners purchased and sold liquor was rigidly fixed by the State Commission. In view of the wide disparity in the gross profits reflected on petitioners' books and the average realized by similar dealers throughout the State, we think the respondent was fully justified in reconstructing petitioners' income by use of the percentage markup method. Nor do we find it unreasonable to consider the inventories shown on the returns as being the inventories of liquor only, for those years when petitioners' books do not show actual inventories. And further, we approve the assumption that the inventories of all other merchandise remained relatively constant throughout the period. It was incumbent upon the petitioners to keep accurate records, including inventories of all merchandise, which they did not do. And, after making allowance for all factors which they claim reduced their margin of gross profit, we conclude that they received substantial amounts of additional income, as set forth in our findings, which they did not report for the years 1944 to 1950, *329 inclusive. We are further satisfied that the respondent has shown by clear and convincing evidence that the petitioners fraudulently understated their income from 1944 to 1950, inclusive, with intent to evade tax. Consistent, substantial understatement of income for seven years, as was true here, is highly persuasive evidence of intent to defraud the Government. See Rogers v. Commissioner, 111 Fed. (2d) 987 (C.A. 6, 1940). Because of our conclusion that a part of the deficiencies for each of the years 1944 to 1950, inclusive, was due to fraud with intent to evade tax, we do not reach the issue raised with respect to the statute of limitation. We assume that the purport of petitioners' argument with reference to an alleged examination of their books and records for the years 1943 and 1944, for a second time, is that section 3631 of the Internal Revenue Code of 1939 invalidates the deficiencies and penalties for those years because that section was allegedly violated by the respondent. We do not think the record establishes that an earlier examination of the books and records for these two years was ever made. In any event, there is no deficiency for the year 1943, *330 and petitioners testified that their books for 1944 had been destroyed by rats prior to the respondent's investigation which resulted in the deficiencies herein. They, therefore, could not very well object to an examination of something they did not possess. See Leslie A. Sutor, 17 T.C. 64 (1951); J. S. McDonnell, 6 B.T.A. 685 (1927). Decision will be entered under Rule 50. Footnotes
1. SEC. 3631. RESTRICTIONS ON EXAMINATION OF TAXPAYERS. No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩
*. Inventory figures are amounts shown on return and are deemed to represent inventory of liquor only, except in 1946, 1947, 1949, and 1950, when the actual amount of liquor inventory was known. Inventory of all other merchandise is deemed to have remained constant.↩