John Schraedel, III and Edna Schraedel (Husband and Wife) v. Commissioner.
Schraedel v. Commissioner
Docket No. 58763.
United States Tax Court
T.C. Memo 1958-184; 1958 Tax Ct. Memo LEXIS 41; 17 T.C.M. (CCH) 921; T.C.M. (RIA) 58184; October 16, 1958
*41 Income: Net worth method: Fraud. - Respondent's determination of income by increase in net worth plus nondeductible expenditures method approved with adjustments of some items in the computation, in accordance with the evidence. Determination that the petitioners are liable for additions to tax for fraud, pursuant to section 293(b), Internal Revenue Code of 1939, disapproved. Robert R. White, Esq., 924 du Pont Building, Miami, Fla., for the petitioners. W. Preston White, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and additions thereto for the years and in the amounts as follows: Additions to Tax
Sec.
Sec.
Sec. 294
294(d)
Year
Deficiency
293(b)
(d)(2)
(1)(A)
1946
$15,810.27
$7,905.14
$948.62
$1,581.04
1947
1,372.27
617.60
68.84
1948
11,404.82
5,702.41
670.79
1949
835.26
417.63
50.12
83.52 The deficiencies result from the respondent's determination of income upon an increase in net worth plus nondeductible expenditures method. The petition, as twice amended, alleges error in the respondent's *42 determination as to only a few of the items that appear in the respondent's net worth statement. However, evidence was offered, and stipulations were filed, as to a number of other items, and therefore we will make findings as to each item of asset and liability that is material to a correct determination of income on the net worth method. By amendment filed after the hearing, with leave of the Court, the petitioners allege that the statute of limitations bars assessment and collection for all years in issue. On brief, the respondent concedes error in his determination of the 50 per cent additions under section 293(b) of the Internal Revenue Code of 1939 for the calendar years 1946 and 1949. He also concedes on brief that assessment of any deficiency for 1946 is barred by the statute of limitations. Accordingly, we will not deal with the year 1946 in our Findings of Fact and Opinion, except for the purpose of determining opening net worth for the year 1947. Findings of Fact The stipulations of facts are incorporated herein by this reference. The petitioners are husband and wife and reside in Miami, Florida. For the calendar years 1945 to 1949, inclusive, they filed joint *43 income tax returns with the collector for the district of Florida. Except where otherwise indicated the husband will be referred to herein as the petitioner. The returns were prepared by an individual who was employed by the petitioner as bookkeeper throughout the taxable years. Sources of income reported by the petitioners included real estate rental, trucking, and the operation of an electrical contracting business in Miami under the name of St. Johns Electric Co. Findings of Fact as to Net Worth No complete books or records as to the petitioners' income were furnished to the respondent's agents or produced at the hearing. The petitioner's records of contracts were found by examining revenue agents and by an accountant employed by the petitioner to be not in agreement with his other records. Examining revenue agents found that the petitioner's income as stated by him for credit purposes, and as reflected by the amount of his net worth, was in excess of income reported for tax purposes. Upon ascertaining that the petitioner's books and records were inadequate and did not accurately reflect income, an examining agent, who is a certified public accountant, made a field examination *44 for the purpose of determining the amounts of the petitioners' assets and liabilities and consequent net worth. Such examination included inspection of records of, or interviews with, banks, mortgage companies, savings and loan associations, insurance agents, a former accountant of the petitioner, and examination of real estate transactions. As the result of such examination the respondent determined increases in net worth, and net income, for the taxable years 1947, 1948, and 1949 as shown by the following tabulation: ASSETS
12-31-46
12-31-47
12-31-48
12-31-49
Cash
$ 4,027.25
$ 1,470.77
$ 4,027.23
$ 1,258.42
Autos
4,187.97
9,308.96
12,183.96
10,264.89
Machines
1,100.00
1,100.00
1,525.00
1,525.00
Receivables
16,081.28
9,752.88
3,660.92
1,635.00
Inventory
8,149.90
10,250.25
15,775.30
20,650.70
Furniture & Fixtures
1,167.50
1,290.22
13,768.19
13,768.19
Land & Buildings
52,660.00
62,363.15
104,363.15
96,863.15
Deposits
884.53
1,489.97
1,925.92
2,686.93
Boat
6,800.00
6,800.00
Total Assets
$88,258.43
$103,826.20
$164,029.67
$148,652.28
LIABILITIES
Accounts Payable
$11,454.45
$ 17,553.67
$ 43,848.09
$ 13,123.37
Loans Payable
1,054.58
1,054.58
1,590.44
5,548.68
Notes Payable
540.40
405.30
2,770.20
Mortgages Payable
22,413.27
25,167.95
17,288.85
31,079.27
Depreciation Reserve
2,221.61
5,839.49
10,284.46
13,227.02
Total Liabilities
$37,684.31
$ 50,020.99
$ 75,782.05
$ 62,978.34
Net Worth 12-31
$50,574.12
$ 53,815.21
$ 88,247.62
$ 85,673.94
Net Worth 1-1
50,574.12
53,805.21
88,247.63
Increase Net Worth
3,231.09
34,442.41
(2,573.69)
Add: Personal Expenditures
6,000.00
6,000.00
6,000.00
Loss on Sale of Boat
5,300.00
$ 9,231.09
$ 40,442.41
$ 8,726.31
Less: 50% Capital Gain, Sale of Jack-
sonville Property
552.05
Adjusted Gross Income
$ 9,231.09
$ 40,442.41
$ 8,174.26
Deductions: Contributions
$ 200.00
$ 250.00
$ 250.00
Medical Expense
219.45
Miscellaneous
30.00
50.00
50.00
Total Deductions
$ 449.45
$ 300.00
$ 300.00
Corrected Net Income
$ 8,781.64
$ 40,142.41
$ 7,874.26
*45 Based upon stipulations of the parties, and oral and documentary evidence, we find the facts to be as herein set forth with respect to the several items pertinent to a net worth computation. ASSETS Cash. The petitioners had cash at the opening and close of the several years in question in the amounts determined by the respondent and included in his net worth computation. Automobiles. At the close of each of the years 1947 to 1949, inclusive, the petitioners owned automobiles, trucks, and a trailer, the aggregate costs of which were in the amounts determined by the respondent. As of the end of the year 1946 the petitioners owned automotive equipment which had cost $6,687.97. Machines. At the close of each of the years 1946 and 1947 the petitioners had on hand a power plant which had cost $1,100. At the end of 1946 they also had a trenching machine which had cost $2,750. Thus at the end of the years 1946 and 1947 the petitioners had machines with cost as follows: Year
Cost
1946
$3,850
1947
1,100 The trenching machine was sold in 1947 at a price of $1,700. As of the end of each of the years 1948 and 1949 the petitioners had machines the costs of which *46 were as determined by the respondent. Receivables. At the close of each of the years 1946 to 1949, inclusive, the petitioners had net accounts receivable, after deducting the reserve for bad debts, in the amounts determined by the respondent. Inventory. At the end of each of the taxable years 1946 to 1949, inclusive, the petitioners had inventories in the amounts determined by the respondent. Furniture and Fixtures. 1. At the close of each of the years 1946 to 1949, inclusive, the petitioners had furniture and fixtures in the business operated under the name of St. Johns Electric Co., 83 S. W. Eighth Street, Miami, with costs as follows: Year
Cost
1946
$1,167.50
1947
1,290.22
1948
1,587.38
1949
1,587.38
2. At the close of each of the years 1946 to 1948, inclusive, the petitioners owned furniture at premises known as 342 E. Duval Street, Jacksonville, which had a cost of $750. This furniture was sold in 1949. 3. At the close of each of the years 1948 and 1949 the petitioners owned furniture and fixtures at the premises known as 837 S. E. Miami Road which had a cost of $12,180.81. 4. At the close of each of the years 1946 to 1949, inclusive, the *47 petitioners owned furniture at premises known as 174 S.E. 14th Lane, Miami, which had a cost of $800. Land and Buildings. On May 23, 1944, the petitioners purchased property at 174 S.E. 14th Lane, Miami, for a consideration of $12,700. The cost of buildings on the property was $11,000. They made a down payment at the time of purchase of $5,700. Mortgages on that property, executed by the petitioners, were outstanding at the close of the years 1946 to 1948 as follows: Year
Amount
1946
$5,463.27
1947
5,132.70
1948
4,063.70 The petitioners owned the property at the close of 1949. No mortgages were outstanding against it at that time. By deed dated October 7, 1946, the petitioners acquired property known as Lot 37, Block 2, Point View, Miami, for $3,000 cash. They still owned the property at the close of the year 1949. By deed dated May 31, 1945, the petitioners and an individual by the name of Van de Kreeke acquired title to property at 83 S.W. 8th Street, Miami, for a consideration of $23,500. The cost of the buildings on the property was $18,900. The petitioners and Van de Kreeke made a down payment of $5,000 ($2,500 by the petitioners *48 and $2,500 by Van de Kreeke) of which sum the petitioners borrowed $2,000 from Van de Kreeke. The purchasers gave the vendor a mortgage on the property in the amount of $18,500. In March 1946 the petitioners acquired Van de Kreeke's interest in the property at his original cost, assuming the full mortgage. In 1949 they refinanced the mortgage. At the close of the years 1946 to 1949, inclusive, the petitioners owed amounts on mortgages on that property as follows: Year
Amount
1946
$15,650.00
1947
13,848.75
1948
11,925.15
1949
13,875.00 The petitioners paid their loan of $2,000 owed to Van de Kreeke during the year 1946. The petitioners made improvements to the property in 1946 in the amount of $5,960, and additional improvements in 1947 in the amount of $1,203.15. They owned the property at the close of 1949. By deed dated July 14, 1947, the petitioners acquired the property known as 837 S. E. Miami Road, Miami, for $8,500. In 1949 the petitioners executed two mortgages on that property. At the close of 1949 the petitioners owed an aggregate amount of $17,204.27 on those mortgages. The petitioners constructed a 12-unit apartment building on the property in *49 1948 at a cost of $42,000. The building was completed in January 1949. The petitioners owned the property at the close of 1949. By deed dated May 26, 1945, the petitioners acquired property known as Lot 18, Liberty Park, Miami, for $65. Some time prior to December 31, 1945, the petitioners purchased the property known as 342 E. Duval Street, Jacksonville, for $3,750 and made improvements thereon in the amount of $3,750. In connection with the purchase of that property the petitioners executed a mortgage on which they owed $1,300 at the close of each of the years 1946, 1947, and 1948. They sold the property for $7,950 in the year 1949, and reported a long-term capital loss of $5,362.55. The respondent determined a long-term capital gain of $1,104.10 as follows: Sales Prices
$7,950.00
Basis
$7,500.00
Depreciation: 5 yrs. on $5,500 improve-
ments
1,100.00
Adjusted Basis
$6,400.00
Expense of Sale
445.90
6,845.90
Long-term gain
$1,104.10
50 per cent nontaxable
$ 552.05
In his determination of taxable income for the year 1949 on the net worth method the respondent allowed a deduction of $552.05, being one-half of the capital gain determined. *50 Prepaid Expenses and Deposits. At the end of each of the taxable years 1946 to 1949, inclusive, the petitioners had prepaid expenses and had made deposits in the amounts determined by the respondent and included in his net worth computation under the heading "Deposits." Boat. During the year 1947 the petitioner purchased a boat for $6,800. He made a down payment of $500, traded in two boats which had a value of $1,500, and gave a chattel mortgage in the amount of $4,800 for the balance. At the end of 1947 the petitioner owed the full amount of the mortgage; the mortgage was paid in 1948. The petitioner sold the boat in 1949 for $1,500. The two boats that were traded in on the new boat in 1947 had belonged to the petitioner's two sons, who had purchased such boats with their own funds. The sons did not expect to receive any payment from the petitioner for their boats. For the purpose of the net worth computation, the boat is includible among assets at the end of the years 1947 and 1948 at an amount of $5,300. Stock. In 1948 the petitioners received $3,000 of stock of Murray Weinger's Copa, Inc., which stock was on hand on December 31, 1948, and which became worthless in 1949. *51 In his net worth determination the respondent did not include among assets any amount on account of this stock. By an arbitration agreement dated February 17, 1949, it was agreed that the net amount due St. Johns Electric Co. for extras on the Copa, Inc. job was $11,762.09. Of that amount a partial payment in the amount of $3,168.38 was made in March 1949, and the petitioners received no further payment. An involuntary petition in bankruptcy was filed against the debtor, Copa, Inc. in May 1949. The petitioners received no payment from the bankruptcy. LIABILITIES Accounts, Loans and Notes Payable. At the close of the years 1946 to 1949, inclusive, the petitioners had accounts payable as follows: Year
Amount
1946
$ 5,497.81
1947
11,170.38
1948
36,319.80
1949
11,862.51
The petitioners owed the Metropolitan Life Insurance Company the following amounts at the close of the years 1946 to 1949, inclusive: Year
Amount
1946
$1,054.58
1947
1,054.58
1948
1,054.58
1949
3,156.54
At the close of the years 1946 to 1949 the petitioners had loans payable to the Pan American Bank as follows: Year
Amount
1946
$ 540.40
1947
405.30
1948
2,770.20
*52 At the close of the years 1948 and 1949 the petitioners had miscellaneous loans payable in amounts as follows: Year
Amount
1948
$ 535.86
1949
2,392.14
Taxes Payable. At the close of the years 1946 to 1949, inclusive, the petitioners had taxes payable in amounts as follows: Year
Amount
1946
$4,480.42
1947
3,784.41
1948
6,156.43
1949
1,852.97
Rent Deposits. At the close of the years 1947 to 1949, inclusive, the petitioners had received rent deposits in amounts as follows: Year
Amount
1947
$ 600.00
1948
600.00
1949
600.19
Other Accrued Liabilities. At the close of the years 1946 to 1949, inclusive, the petitioners had other accrued liabilities in amounts as follows: Year
Amount
1946
$1,476.22
1947
1,998.88
1948
771.86
Mortgages Payable. The mortgages payable by the petitioners are described in detail in the Findings above under the caption "Land and Buildings," and "Boat." They are summarized here as follows: 1946
1947
1948
1949 174 S.E. 14th Lane, Miami: Savings & Loan
$ 5,463.27
$ 5,132.70
$ 4,063.70
0
83 S.W. 8th St., Miami
15,650.00
13,848.75
11,925.15
13,875.00
837 S.E. Miami Rd., Miami: Kistler Mortgage
12,704.27
Grimaldi Mortgage
4,500.00
342 E. Duval St., Jacksonville
1,300.00
1,300.00
1,300.00
0
Boat
4,800.00
Totals
$22,413.27
$25,081.45
$17,288.85
$31,079.27
*53 Depreciation Reserve. The reserve for depreciation at the close of each year from 1946 to 1949, inclusive, based upon the foregoing findings, and at rates as used by the petitioners in their returns, is as follows: Year
Amount
1946
$4,226.87
1947
5,162.40
1948
7,722.35
1949
9,582.86
The personal living expenses of the petitioners for each of the taxable years amounted to $4,000. The petitioner executed and filed with lending institutions several financial statements, some of which are as follows: One dated July 16, 1947, showing net worth of $53,443.31 and profit for five months ended May 31, 1947, in the amount of $3,597.83; one dated January 27, 1948, which showed net worth of St. Johns Electric Co. at December 31, 1947, in the amount of $58,672.74 (not including personal property and real estate owned by the petitioner) and net profit for the year 1947 in the amount of $15,679.44; one filed May 31, 1948, showing net income of the business for the 5-month period ended May 31 as $16,224.31; one filed as of August 31, 1948, containing balance sheet of St. Johns Electric Co. as of that date showing a net worth of $83,784.16 and net income for the eight *54 months ended August 31, 1948, in the amount of $34,182.35; one filed November 23, 1948, showing his net worth as $228,000, and stating that construction of the apartment building on the S.E. Miami Road property had cost approximately $42,000, and furniture and furnishings would amount to $7,500; and one dated February 3, 1949, showing his net worth as $161,278.13 as of December 31, 1948, and net profit for the year 1948 in the amount of $41,687.63, before allowing for Federal income taxes for 1948 in the amount of $14,275. The principal source of income of the petitioners reported during the years 1947, 1948, and 1949 was the electrical contracting business operated under the name of St. Johns Electric Co. For the year 1947 the petitioners showed in their return total receipts from this business of $145,025.80, gross profit of $28,661.72, and net profit of $5,679.44. In their 1948 return they showed total receipts from this business of $248,933.83, gross profit of $44,934.45, and net profit of $4,341.23. In their 1949 return they showed gross receipts from this business of $59,028.80, gross profit of $11,331.29, and a net loss of $9,956.63. In their returns for the taxable years *55 the petitioners reported adjusted gross income, net income, exemptions, and remaining taxable net income as follows: 1947
1948
1949
Adjusted gross
income
$4,242.32
$2,642.64
[15,682.53)
Net income
3,221.44
772.62
0
Exemptions
2,500.00
3,000.00
3,000.00
Taxable income
721.44
0
0
Giving effect to the stipulations of the parties, the testimony and other evidence of record, and in some instances the determination of the respondent when not shown to be erroneous, our reconstruction of the petitioners' net worth and the increases therein, the correct amounts of net income and consequent understatements of income by the petitioners for the taxable years are as follows: 1946
1947
1948
1949
ASSETS
Cash
$ 4,027.25
$ 1,470.77
$ 4,027.23
$ 1,258.42
Automobiles
6,687.97
9,308.96
12,183.96
10,264.89
Machines
3,850.00
1,100.00
1,525.00
1,525.00
Receivables
16,081.28
9,752.88
3,660.92
1,635.00
Inventory
8,149.90
10,250.25
15,775.30
20,650.70
Furniture & Fixtures
2,717.50
2,840.22
15,318.19
14,568.19
Land & Buildings
52,725.00
62,428.15
104,428.15
96,928.15
Prepaid Expenses and Deposits
884.53
1,489.97
1,925.92
2,686.93
Boat
5,300.00
5,300.00
Stock
3,000.00
Total Assets
$95,123.43
$103,941.20
$167,144.67
$149,517.28
LIABILITIES
Accts. & Loans Payable
$ 7,092.79
$ 12,630.26
$ 40,680.44
$ 17,411.19
Taxes Payable
4,480.42
3,784.41
6,156.43
1,852.97
Rent Deposits
600.00
600.00
600.19
Other Accruals
1,476.22
1,998.88
771.86
Mortgages Payable
22,413.27
20,281.45
17,288.85
31,079.27
Chattel Mortgage
4,800.00
Depreciation Reserve
4,226.87
5,162.40
7,722.35
9,582.86
Total Liabilities
$39,689.57
$ 49,257.40
$ 73,219.93
$ 60,526.48
Net Worth
$55,433.86
$ 54,683.80
$ 93,924.74
$ 88,990.80
55,433.86
54,683.80
93,924.74
Increase (or Decrease) in Net Worth
(750.06)
39,240.94
(4,933.94)
Add: Personal Expenditures
4,000.00
4,000.00
4,000.00
Loss on Sale of Boat
3,800.00
Loss on Trenching Machine
1,050.00
4,299.94
43,240.94
2,866.06
Less: 50% Capital Gain on Jacksonville
Property
552.05
Adjusted Gross Income
$ 4,299.94
$ 43,240.94
$ 2,314.01
Deductions: Contributions
200.00
250.00
250.00
Medical Expense
219.45
Miscellaneous
30.00
50.00
50.00
Total Deductions
$ 449.45
$ 300.00
$ 300.00
Corrected Net Income
$ 3,850.49
$ 42,940.94
$ 2,014.01
*56 Statute of Limitations The petitioners filed their joint income tax returns for the taxable years on dates as follows: Year
Filing Date
1946
March 15, 1947
1947
January 27, 1948
1948
March 15, 1949
1949
March 29, 1950
The notice of deficiency as to all of the taxable years was mailed on April 12, 1955. The parties have not executed any consents to extend the period for assessment and collection for the year 1946. For each of the years 1947, 1948, and 1949, the parties executed timely consents which extended the time for assessment to June 30, 1955. Declarations of Estimated Tax For each of the years 1947 and 1948 the petitioners filed a declaration of estimated tax showing a tax liability of $225. Ultimate Findings of Fact No part of the deficiency in tax for either of the years 1947 or 1948 was due to fraud with intent to evade tax. Opinion The respondent, upon concluding that the petitioner's books and records were inadequate for the determination of income realized in the taxable years, used the net worth method in determining such income. The right of the respondent to use this method of determining income, in the absence of complete *57 records, as well as for determining whether the records correctly reflected net income, has often been sustained in litigation, both civil and criminal. Holland v. United States, 348 U.S. 121; Carmack v. Commissioner (C.A. 5), 183 Fed. (2d) 1; McGrew v. United States (C.A. 5), 222 Fed. (2d) 458; Morris Lipsitz, 21 T.C. 917, affd. (C.A. 4), 220 Fed. (2d) 871; and David Courtney, 28 T.C. 658. In the instant case the examining revenue agents testified that they were unable to reconcile the petitioner's contracts and his books of account, or the income and losses shown on the joint returns with the increases in the net worth of the petitioners. The books and records that were produced at the hearing were wholly inadequate to permit a determination of net income. Such records consist, in the main, of a journal of the St. Johns Electric Co. for the years 1947, 1948 and 1949 and a tabulation of the costs of the apartment house on S.E. Miami Road. There is no merit to the petitioner's objection to the respondent's use of the net worth method. The parties have filed stipulations concerning a number of the petitioners' *58 assets and liabilities as to which they were at odds prior to the trial. We need not comment on those items other than to say that they are included in our reconstruction of net worth at the stipulated figures. The principal items which remain in controversy are discussed briefly hereinafter. ASSETS Automotive Equipment. The parties disagree as to the proper amount to be included in the net worth computation as of the end of the year 1946 for "autos", which includes automobiles, trucks, and a trailer. The respondent did not include a Packard automobile which the petitioner testified he owned. We have accepted the petitioner's testimony and have included such automobile at a cost of $2,500. That amount, plus other automotive equipment of a cost of $4,187.97 as revealed in the 1946 return and as found by the respondent, results in a total figure for this item of $6,687.97 as of December 31, 1946. At the hearing the parties agreed that the proper cost to be used in the net worth statement as of the end of 1947 for automobiles is $9,308.96. The parties have stipulated the proper figures for automobiles as of the end of 1948 and 1949. The respondent's net worth computation has been *59 revised in accord with the foregoing. Machines. The respondent has included in his net worth statement as of the end of each of the years 1946 and 1947 an amount of $1,100 as the cost of a power plant. The petitioner testified that instead there should have been included $1,350 as the cost of two generators. However, the figures used by the respondent are those appearing in the returns for depreciation purposes and these costs correspond with the cost appearing on the petitioner's ledger. In view of this, we have found that the figures used by the respondent are correct. The petitioner testified in considerable detail as to the acquisition of a trenching machine in 1944 at a cost of $2,750 while he was residing, and in business, in Jacksonville, as to moving such machine to Miami where he then set up business, of storing the machine at a designated place, and of selling it to a designated purchaser in 1947 at a price of $1,700, describing the manner of financing employed by the purchaser. This item does not appear on the books of the petitioner nor in the depreciation schedules attached to his returns, but this may be due to the fact that the machine was not used in the business *60 at Miami, but rather was stored. Nor is there any mention made of the sale thereof in the petitioners' return for the year 1947. The petitioner offered no explanation of this. However, on the basis of the detailed testimony of the petitioner, we are persuaded that the petitioner did have such a machine at a cost of $2,750 which was sold in 1947 for $1,700, and we have included the amount of $2,750 in closing net worth for the year 1946. We have excluded such item from closing net worth of 1947 since it was sold for $1,700 in that year. Presumably the selling price is reflected in some form in closing net worth for 1947, and the net effect of eliminating the item from the closing net worth of 1947 is to offset otherwise taxable income in the amount of the difference between the cost of $2,750 and the selling price of $1,700, namely, $1,050. However, there is no evidence upon which we can determine whether the petitioner is entitled to a deduction in such amount. A calculation of gain or loss would require an adjustment for any depreciation allowable, whereas there is no evidence upon which we can make a proper computation, nor is there any evidence to show whether any loss would constitute *61 an ordinary loss within the meaning of section 117(j) of the Internal Revenue Code of 1939. Under the circumstances, we cannot find that the petitioner is entitled to such a deduction and we have accordingly added back, in our reconstructed net worth computation for the year 1947, the amount of $1,050 as a nondeductible item. It should be added that since we do not know when in 1947 the trenching machine was sold and the proper rate of depreciation, or indeed whether the property was subject to an allowance for depreciation, no adjustment has been made to the depreciation reserve on account of this trenching machine. Furniture and Fixtures and Land and Buildings. The parties are agreed on these items as of the end of each of the years, with the exception of the cost of the building and furniture and fixtures located at 837 S.E. Miami Road, Miami. This property consists of land acquired by the petitioners in 1947 on which they constructed a 12-unit apartment building in 1948. It has been stipulated that the cost of the land was $8,500. The petitioners contend that the respondent twice included the cost of land in his net worth computation. However, upon careful examination, we *62 find that this is not so. The respondent has included the building in his net worth computation as of the end of each of the years 1948 and 1949 at a cost of $42,000 and has included the furniture and fixtures at $12,180.81. The petitioners contend on brief that the cost of the building was $33,729.66 and that the cost of the furniture and fixtures was $10,153.68. They also contend on brief that the apartment was not completed until May or June 1949, and contend that the cost should have been allocated as between the years 1948 and 1949. They also contend that some of the items, totaling $2,253.97, included as cost of the building and some of the items, totaling $1,290.12, included in cost of furniture and fixtures, should be eliminated as constituting current expense. A journal entry from the records of the petitioner, dated December 1948, shows expenditures totaling $57,282.20 in construction of this building, which includes material costs of $39,694.38. This figure of $57,282.20 includes no amount on account of land or furniture and fixtures. In an application, dated November 23, 1948, filed with an insurance company for purposes of obtaining a loan, the petitioner represented *63 that he had expended on construction of the apartment building approximately $42,000 and that furniture and fixtures would amount to $7,500. In a net worth statement filed by the petitioners with the respondent on November 12, 1954, the petitioners represented the cost of the apartment building to have been $62,000. This figure is not broken down. In a statement filed with the respondent on February 18, 1955, the petitioners represented the total cost of the land the improvements on the S.E. Miami Road property to be in the total sum of $62,180.81, of which $8,000 was the cost of the land. In the depreciation schedule attached to their income tax return for the year 1949, petitioners listed the cost of the apartment building in the amount of $45,000 and furniture and fixtures in the amount of $12,555.60. Both the building and the furniture and fixtures were shown as having been acquired on January 15, 1949. Upon the basis of all the evidence, particularly the representations made by the petitioners in their income tax return for the year 1949 that the cost of the apartment building was $45,000 and the cost of the furniture and fixtures was $12,555.60, we think it is reasonable to *64 conclude that the respondent was not in error in using for net worth purposes the lesser cost figures of $42,000 for the building and $12,180.81 for furniture and fixtures as of December 31, 1948 and 1949, and we have found as a fact that the costs were in the amounts determined by the respondent. We have given consideration to the petitioners' contention that the building was not entirely completed by the end of 1948, but from the record it would seem that it was substantially completed. We think the petitioner was in error in testifying that the building was not completed until May or June 1949, since the returns indicate completion at January 15, 1949. As previously noted, in November 1948 the petitioner represented to a lending institution that he had expended $42,000 for the cost of the building. We also note that certain work sheets submitted by the petitioner, which appear to be incomplete, show that in 1948 at least $11,443.79 had been expended for furniture and fixtures. Boat. The respondent included as of the end of the years 1947 and 1948 the amount of $6,800 as the cost of a boat purchased by the petitioner in 1947. Since the boat was sold in 1949 the cost was excluded *65 from assets as of the end of 1949. The petitioner objects to the amount included as cost. We have found as a fact that $1,500 of the purchase price of the boat was made up of the value of two boats which the petitioner's sons owned and which they permitted him to use as a part of the purchase price, without expecting any repayment from the petitioner. It further appears that the sons had purchased these two boats out of their own funds. Under the circumstances, the two boats were in effect gifts from the sons to the petitioner and the value thereof should not enter into the calculation of the petitioner's net income. Accordingly, we have, in our reconstructed net worth computation, included the boat acquired by the petitioner at a cost of $5,300. The elimination by the respondent of any amount on account of the boat as of the end of the year 1949 had the effect of lessening the increase in net worth for 1949 by that amount. However, the respondent added back as a nondeductible item $5,300 for 1949. Apparently the reason the respondent did not include the whole amount of $6,800 was because the petitioner had sold the boat for $1,500, which presumably was among the petitioner's assets *66 in some form as of the end of the year. The respondent has allowed no depreciation on the boat and thus the net effect of his holding is that the boat was entirely a personal item. The petitioner has adduced no evidence in this respect, although in his returns he deducted depreciation and claimed a loss on the sale, on the basis of 25 per cent use of the boat in business. In the absence of proof as to the use of the boat, we have not taken into consideration any depreciation in our reconstruction of the petitioner's net income, nor have we allowed any loss. Instead, we have added to the increase in net worth for 1949 an amount of $3,800, being the difference between the cost of $5,300 and the selling price of $1,500. Murray Weinger's Copa, Inc. Transaction. In his net worth computation the respondent did not include certain stock acquired in 1948 by the petitioner in Murray Weinger's Copa, Inc., apparently as part payment for work done under a contract with that company. The parties have stipulated that petitioner received $3,000 of such stock in 1948. We think it reasonable to assume that the parties mean that this stock had a cost of $3,000, and accordingly we have included such *67 stock in our reconstruction of the net worth computation at $3,000 as of December 31, 1948. It has been stipulated that this stock became worthless in 1949 and hence this item is excluded from closing net worth of 1949. The petitioners also claim that they are entitled to a deduction in 1949 of the amount of $11,593.71 because of worthlessness of a debt owing from Murray Weinger's Copa, Inc., for work done for that company. We fail to see how the loss could be that great since it has been stipulated that the petitioner received a partial payment in 1949 of $3,168.38. Apparently the figure claimed includes the loss on the stock which we have in effect allowed by excluding the cost of the stock from assets at December 31, 1949. In any event, we have concluded that on the record as presented the petitioners have not shown that they are entitled to a bad debt deduction. In the first place we do not know whether the amount owing has been included in the amount of stipulated accounts receivable. If not, then it has not been included in income and of course cannot be deducted. Even if it was so included, we note that the stipulated amounts of accounts receivable are net figures after deducting *68 the reserve for bad debts. Whether this debt is reflected in the reserve for bad debts we do not know. But certainly the Internal Revenue Code does not contemplate both the deduction of specific debts and deductions on the reserve method. Accordingly in our reconstructed computation of net income by the net worth method we have not allowed a specific deduction for 1949 as claimed. LIABILITIES The only item under this heading which is in controversy is the reserve for depreciation. In our reconstruction we have made such changes in the respondent's determination as are made necessary by changes made in the costs of assets as established by the evidence and as set forth in our Findings of Fact. We have used the rates used by the petitioners in their returns. Deficiencies in Tax Based on our reconstruction of the net worth computation, we have found and hold that the correct net income of the petitioners for the taxable years 1947, 1948 and 1949 was $3,850.49, $42,940.94, and $2,014.01, respectively. In our reconstruction we have allowed the deductions determined by the respondent in the absence of any claim or showing that the petitioners are entitled to more. The record does *69 not justify a conclusion that any of the income was nontaxable. It is true that the petitioner did testify very generally that during the years in question he had received loans from his mother in an amount in excess of several thousand dollars, that such loans had not been repaid, and that in view of this he had executed a written release, in favor of his sister, of any right to receive any amount to which he was entitled from his mother's estate upon her death. However, the petitioner was not specific as to when the loans were obtained or the precise amount thereof, and hence we are unable to make any finding of fact in this respect. The following tabulation shows the net income reported by the petitioners on their returns for the years 1947, 1948 and 1949, the amount determined by the respondent, and the correct net income as found by us based upon our reconstruction of the net worth computation: 1947
1948
1949
Net income re-
ported by the
petitioners
$3,221.44
$ 772.62
0
Net income de-
termined by the
respondent
8,781.64
40,142.41
$7,874.26
Correct net in-
come
3,850.49
42,940.94
2,014.01
The petitioners claimed personal exemptions *70 of $2,500 in 1947 and $3,000 in each of the years 1948 and 1949, resulting in reported net income subject to tax of $721.44 for 1947 and no reported income subject to tax for the years 1948 and 1949. The parties are in accord that the petitioners are entitled to the amount of exemptions claimed. Allowing the petitioners the $2,500 exemption claimed results in correct net income subject to tax for 1947 of $1,350.49 whereas, as stated, petitioners reported net income subject to tax of $721.44. It follows that there is a deficiency in tax for the year 1947. Allowing the petitioners a personal exemption of $3,000 results in net income subject to tax for the year 1948 in the amount of $39,940.94. There is therefore a deficiency in tax for 1948 since the petitioners reported net income subject to tax of only $772.62. Allowing the petitioners credit for the personal exemption of $3,000 for 1949, results in no net income subject to tax. As previously stated, the respondent concedes that assessment of any deficiency for the year 1946 is barred by the statute of limitations. Additions to Tax under Sections 294(d)(1)(A) and 294(d)(2) Since the respondent has conceded that assessment *71 of any deficiency for the year 1946 is barred by the statute of limitations, assessment of the additions to tax determined by him for that year under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939, is likewise barred. The respondent determined an addition to the tax under section 294(d)(2) for the year 1947 in the amount of $68.84 for underestimation of estimated tax. The petitioners filed a declaration of estimated tax for that year showing estimated tax in the amount of $225. Inasmuch as under our reconstruction of the net worth computation we have found that the petitioners had net income subject to tax, after allowance of personal exemptions, of $1,350.49, it seems clear that the petitioners did underestimate their tax for that year in a relatively small amount. For the year 1948 the petitioners filed a declaration of estimated tax, which also showed estimated tax of $225. In view of our finding that the petitioners had net income of $42,940.94 in that year, it follows that the petitioners in fact greatly under-estimated their tax for that year. However, on their returns for each of the years 1947 and 1948, the petitioners showed that the estimated *72 tax of $225 had been paid, and this is not questioned by the respondent in his notice of deficiency. It also appears that for each year the amount of estimated tax was greater than the tax shown on the return for the preceding year (zero for the year 1946 and $137.08 for the year 1947). Under the circumstances the addition to tax provided under section 294(d)(2) is inapplicable for either year. [1]
The respondent determined an addition to tax under section 294(d)(1)(A)in the amount of $83.52 for the year 1949 for failure to file a declaration of *73 estimated tax. We have found that the petitioners had net income for 1949 in the amount of $2,014.01. Allowing them the benefit of the personal exemption of $3,000 results in no net income subject to tax and hence no tax liability. It follows that the petitioners are not liable for any addition under section 294(d)(1)(A). [2]
For the year 1949 the respondent also determined an addition to tax under section 294(d)(2) in the amount of $50.12 for underestimation of estimated tax. Since we have found that the petitioners had no tax liability for 1949, it follows that they are not liable for any addition to tax under section 294(d)(2). [3]
Additions to Tax under Section 293(b) In the notice of deficiency the respondent determined 50 per cent additions to the tax under section 293(b) of the Internal *74 Revenue Code of 1939[4] for the years 1946 to 1949, inclusive, on the ground that some part of the deficiency for each of those years was due to fraud with intent to evade tax. However, on brief he conceded that the return for 1946 was not false and fraudulent with intent to evade tax and that no part of the deficiency was due to fraud with intent to evade tax, and that therefore the assessment of any deficiencies and additions for 1946 is barred. On brief he also conceded error in determining the 50 per cent addition to tax for the year 1949. This leaves in issue only the question whether the petitioners are liable for the 50 per cent addition to tax for the years 1947 and 1948. Upon the issue of fraud the burden of proof is upon the respondent. Section 1112 of the Internal Revenue Code of 1939.[5] Fraud is never presumed. It must be proved by clear and *75 convincing evidence. Henry S. Kerbaugh, 29 B.T.A. 1014, affd. (C.A. 1), 74 Fed. (2d) 749; Arlette Coat Co., 14 T.C. 751; Frank Imburgia, 22 T.C. 1002; Kurnick v. Commissioner (C.A. 6), 232 Fed. (2d) 678, affirming a Memorandum Opinion of this Court [14 TCM 106, T.C. Memo. 1955-31]; Davis v. Commissioner (C.A. 7), 239 Fed. (2d) 187, affirming a Memorandum Opinion of this Court [14 TCM 294, T.C. Memo. 1955-87]. The evidence must clearly and convincingly establish that the petitioner intentionally evaded a tax believed to be owing. Kurnick v. Commissioner, supra.
In the instant case we have found that for the year 1947 the correct net income, before allowance of the personal exemption of $2,500, was $3,850.49 whereas the petitioners had reported net income of $3,221.44. In view of the relatively small understatement of net *76 income by the petitioners for 1947, we have concluded and found as a fact that no part of the deficiency for that year is due to fraud with intent to evade tax. Accordingly, for that year the petitioners are not liable for any addition to tax under section 293(b). The reconstructed net worth computation shows that the petitioners did not have net income far in excess of the amount reported by them in the year 1948. However, this fact alone cannot lead to a conclusion of willful intent to evade tax. Holland v. United States, 348 U.S. 121; Davis v. Commissioner, supra; James Nicholson, 32 B.T.A. 977, affd. (C.A. 8), 90 Fed. (2d) 978; L. Glenn Switzer, 20 T.C. 759. We do not have here proof of substantial understatements of income over a number of consecutive years, which would be persuasive evidence of fraud. See Holland v. United States, supra; Schwarzkopf v. Commissioner (C.A. 3), 246 Fed. (2d) 731, affirming on this issue a Memorandum Opinion of this Court [15 TCM 762, T.C. Memo. 1956-155]; and Sasser v. United States (C.A. 5), 208 Fed. (2d) 535. There is no evidence *77 of any specific item of income which has been omitted or item of deduction that has been overstated, nor do we have here the indicia of fraud sometimes present, as, for example, affirmative attempts to conceal information. We believe it true, as the revenue agents testified, that the petitioner did not keep adequate books. Certainly the records which were submitted at the hearing were fragmentary and insufficient for purposes of calculating net income. However, the petitioner did employ a regular bookkeeper who kept some books and at one time he also employed the services of an accountant. The return for the year 1948 does disclose very substantial gross receipts and gross profit (although small net profit) from the electrical business. His failure to keep adequate records, contrary to the requirements of the statute and regulations, is not to be condoned and in this respect we think he was guilty of gross negligence, but the evidence does not establish that his failure to keep adequate records was engendered by a tax evasion motive. Negligence, whether slight or great, is not equivalent to fraud with intent to evade tax. Walter M. Ferguson, Jr., 14 T.C. 846. The respondent, *78 to sustain his contention that the petitioners knowingly understated their income for the year 1948, relies heavily upon the fact that the husband made statements to lending institutions indicating large net income for that year, stating in one of them that his net income for 1948 was over $41,000. In the light of the whole record here, these statements of the petitioner do no more than arouse a suspicion of intent to understate net income in the tax return. It has often been held that suspicion alone is not sufficient to sustain a charge of fraud. Walter M. Ferguson, Jr., supra, and L. Glenn Switzer, supra, and cases cited therein. The evidence adduced does not clearly and convincingly establish that any part of the deficiency for 1948 was due to fraud with intent to evade tax. The respondent has not met his burden upon this issue, and we have therefore held as a fact that no part of the deficiency for the year 1948 was due to fraud with intent to evade tax. Accordingly, the petitioners are not liable for an addition to tax for the year 1948 under section 293(b). Decision will be entered under Rule 50. Footnotes
1. Section 294(d)(2)↩ specifically provides that it shall not apply, under regulations prescribed by the Commissioner with the approval of the Secretary, "to the taxable year in which the taxpayer makes a timely payment of estimated tax within or before each quarter * * * of such year * * * in an amount at least as great as though computed (under such regulations) on the basis of the taxpayer's status with respect to the personal exemption and credit for dependents on the date of the filing of the declaration for such taxable year * * * but otherwise on the basis of the facts shown on his return for the preceding taxable year. * * *"
2. Sec. 294(d)(1)(A)↩ provides in part, "For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax * * *."
3. Sec. 294(d)(2)↩ provides for an addition to tax "If 80 per centum of the tax * * * exceeds the estimated tax * * *."
4. Sec. 293(b) provides: (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency)shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
5. SEC. 1112. BURDEN OF PROOF IN FRAUD CASES. In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Commissioner.↩