Order may be drawn in accordance with this opinion.

Alexander and Nina **FIAMBOLIS**, Plaintiffs,

v.

**UNITED STATES of America**, Defendant.

**Civ. A. No. 4078.**

United States District Court E. D. South Carolina, Charleston Division.

June 21, 1957.

Jack White, Charleston, S. C., for plaintiffs.

N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., Arthur G. Howe, Asst. U. S. Atty., Charleston, S. C., for defendant.

WILLIAMS, District Judge.

This is a suit to recover deficiencies in income taxes and interest paid by plaintiffs to the Government in the respective amounts of $4,117.56 for the calendar year 1947 and $549.24 for the calendar year 1948.

The sole question at issue is whether these amounts paid in 1947 and 1948 by the plaintiffs, in connection with their business of ship chandlery, to officers of foreign flagships calling at the Port of Charleston, South Carolina, are deductible as ordinary and necessary expenses in the determination of taxable income under the provisions of the Internal Revenue Code.

The statute involved is 26 U.S.C.A. (I.R.C.1939) § 23.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

Also involved is Regulation 111, § 29.-23(a)–1, which is as follows:

"Business expense.—Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, * * *."

The plaintiffs entered the business of ship chandlery in Charleston, South Carolina, in January 1947 in the name of Palmetto Ship Chandling Company. The business was confined to foreign flagships. During the year 1947, the gross sales of provisions and supplies to such ships were $132,276.65 on which the plaintiffs gave rebates and paid commissions of $8,638.03 to the ships' officers. During the year 1948, gross sales were $45,242.62, and rebates or commissions were made in the sum of $2,-400.58. The plaintiffs deducted the rebates or commissions as expenses in their income tax returns, but the deduction was disallowed by the defendant. The deficiencies in income tax, including interest, were paid and the present suit for refund followed.

Defendant established that the rebates or commissions were made indiscriminately in connection with every ship serviced, and this makes such transaction ordinary and natural. Plaintiffs also contend that if they did not give this rebate or commission, they would not be able to obtain any business from foreign vessels, and for this reason, this practice was therefore necessary.

### Findings of Fact

I find that the testimony conclusively shows that there has existed from time immemorial, in the ship chandlery business not only in the United States and Canada, but all over the world, the practice of rebating to the ships' officers the sum of approximately 5% of the

total invoice price of the ships' stores billed to the vessel by the ship chandler. There are few exceptions like cigarettes and medical supplies, but these items are not material here. I find that the plaintiffs paid rebates or commissions indiscriminately and that but for the payment of these sums, the plaintiffs would not have been able to secure any business from the foreign vessels. I find further that foreign ship captains or masters are paid only about one-fourth of the amount which is paid to American officers on similar ships. I find that the captains or masters of foreign ships are always paid a rebate or commission of approximately 5% on the sale price. I find that the rebates or commissions were made by plaintiffs to all ship captains which were served, and that this practice certainly would make these transactions ordinary and natural. I find that it is certain that no business could have been secured without making discounts to these vessels, and that the practice was therefore necessary. I find further from the testimony presented at the hearing that the owners of the ships not only knew about the practice of their captains and masters receiving discounts, but actually approved of it. It follows therefore that, (1) the practice of giving discounts or kickbacks to ships' captains or masters was common knowledge and customary in the industry, and in the community, (2) was appropriate in obtaining business and (3) was made with the knowledge and consent of the owner or prospective customer.

## Conclusions of Law

The State Statute, which defendant asserts was violated by plaintiffs, obviously contemplates a transaction by a corrupt agent receiving a secret gift or gratuity to the injury of such agent's employer and in order to convict under such statute, it would be necessary to establish criminal intent, since such legislative purpose is obvious in the statute.

In the instant case there was a receipt of a gift or gratuity which the ship's owners not only knew about but actually consented to. There was therefore no crime or violation of public policy of the state. The transactions in the instant case are within the definition of ordinary and necessary expenses as set forth in the opinion of the Supreme Court in Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 499, 96 L.Ed. 769, since they were:

" * * * normal, usual and customary in size and character. The transactions from which they arose were of common or frequent occurrence in the type of business involved. They reflected a nationwide practice. Consequently, they were 'ordinary' in the generally accepted meaning of that word. [Citations omitted.]

"The payments likewise were 'necessary' in the generally accepted meaning of that word. It was through making such payments that petitioners had been able to establish their business * * *."

The situation here is similar to that involved in the sale of milk in Pennsylvania by the Pittsburgh Milk Company. Pittsburgh Milk Company v. Commissioner, 26 T.C. 707. Such company, during 1947, 1948 and 1949, made allowances, discounts or rebates in connection with the sale of its milk. It was considered necessary that such allowances be made to meet competition and to maintain its position in the industry. This practice was also followed by other milk companies in the state of Pennsylvania. In spite of the fact that such sales were made in violation of the prices fixed by the Milk Control Commission of the Commonwealth of Pennsylvania, the Tax Court allowed the deduction or adjustment to the sale price of the taxpayer and said:

"It does not follow, of course, that all allowances, discounts and rebates made by a seller of property constitute adjustments to the selling prices. Terminology, alone, is not controlling; and each type of transaction must be analyzed with respect to its own facts and sur-

rounding circumstance. Such examination may reveal that a particular allowance has been given for a separate consideration—as in the case of rebates made in consideration of additional purchases of specified quantity over a specified subsequent period; or as in the case of allowances made in consideration of prepayment of an account receivable, so as to be in effect a payment of interest. The test to be applied, as in the interpretation of most business transactions, is: What did the parties really intend, and for what purpose or consideration was the allowance actually made? Where, as here, the intention and purpose of the allowance was to provide a formula for adjusting a specified gross price to an agreed net price, and where the making of such adjustment was not contingent upon any subsequent performance or consideration from the purchaser, then, regardless of the time or manner of the adjustment, the net selling price agreed upon must be given recognition for income tax purposes."

Since it clearly appears that these discounts or rebates paid by the plaintiffs were *normal, usual and customary* in the industry and in the community and were appropriate and helpful in obtaining the business and were made with the knowledge and consent of the customer, it therefore follows that no State law or public policy of the State has been violated. The discounts or rebates were made in the normal and ordinary course of business, were necessary and helpful in obtaining business, and were made with the consent of the owners of the flagships. It therefore follows that a refund as claimed by the plaintiffs should be authorized. It is therefore

Ordered that the plaintiffs have judgment against the defendant for the sums paid by them under protest plus interest as provided by law.