Eugene **RICHARDSON** and Anna W. Richardson, Eugene Richardson, and Estate of J. W. Richardson, Deceased, Eugene Richardson, Executor, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 7774.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 19, 1959.

Decided March 3, 1959.

Elden McFarland, Washington, D. C. (Gerard Hartzog, Columbia, S. C., on brief), for petitioners.

Morton L. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PAUL, District Judge.

SOBELOFF, Chief Judge.

The appeals in these three consolidated cases are from Tax Court decisions upholding income tax deficiencies and fraud penalties assessed against petitioners Eugene Richardson, his wife, Anna W. Richardson, and his brother, J. W. Richardson for the years 1946, 1947, and 1948.

For many years Eugene and J. W. Richardson engaged in the ship chandlering business in the port of Charleston, South Carolina. In an earlier period the business had been incorporated, but during the years in question the two men traded as Richardson Brothers, a partnership. Anna W. Richardson was not directly involved in the business and is a party only because she filed a joint tax return with her husband for 1948.

It has become a general practice for chandlers in the larger coastal ports of the United States to give captains or masters of foreign flag ships a commission or "kickback" on their orders. Generally the commission equals 5 per cent of the gross invoice. These payments augment the salaries received by captains of foreign vessels, which are notably lower than those paid captains of American ships. The Commissioner of Internal Revenue has ruled [1] in accordance with the principle laid down in Lilly v. Commissioner, 1952, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769,[2] that such payments are deductible by the chandlers as

---

In Revenue Ruling 54-27, the Commissioner of Internal Revenue stated that "kickback" payments made by taxpayers subject to the Federal Trade Commission Act, 38 Stat. 717, as amended, 15 U.S.C.A. § 41 et seq., to employees or purchasing agents of their customers or prospective customers are not deductible, for Federal income tax purposes, unless the following conditions are met: The payments (1) must be normal, usual and customary in the industry and in the community, (2) must be appropriate and helpful in obtaining business, and (3) must be made with the knowledge and consent of the customer or prospective customer.

In a letter to Paul Richman & Company, Inc. of Norfolk, Virginia, dated March 14, 1957, the Commissioner stated that based upon the represented customs in the ship chandlering business, the commissions paid to captains of foreign ships

met the basic provisions of Revenue Ruling 54-27 and were deductible.

2. In the Lilly case, commissions paid by a North Carolina optician to eye doctors were held to be deductible under Section 23 of the 1939 Code, 26 U.S.C.A. § 23, as ordinary and necessary business expenses. The Commissioner had disallowed these deductions and both the Tax Court 1950, 14 T.C. 1066 and this court, 4 Cir., 1951, 188 F.2d 269 sustained the Commissioner on the ground that the payments were contrary to public policy. The Supreme Court held that in order for expenditures, otherwise ordinary and necessary not to be deductible because contrary to public policy, they must frustrate national or state policies evidenced by some governmental declaration. It is not enough that the payments be considered unethical or generally against public policy. Even though the state of

ordinary and necessary business expenses.[3]

As a practical matter, it is extremely difficult for chandlers to substantiate the actual amount of payments claimed to have been made by them. Because many ships sail after banking hours, when checks cannot be cashed, payments often must be in cash; and the ships' officers normally refuse to sign receipts. Several cases have resulted recently from the Commissioner's refusal to allow deductions for such unsubstantiated claimed commissions. Fiambolis v. United States, D.C.E.D.S.C.1957, 152 F.Supp. 10; Valetti v. Commissioner, 1957, 28 T.C. 692 affirmed in part and reversed in part, 3 Cir., 1958, 260 F.2d 185.

The instant case likewise involves a refusal by the Commissioner to allow unsubstantiated commissions, but it is further complicated by the fact that Richardson Brothers used accounting methods which not only failed to record commissions paid, but also omitted certain items of gross income. It was the company's practice to cash some incoming checks without entering them on the books and then to pay commissions out of the proceeds. The result was that the partnership's books and tax returns understated gross receipts in the three years by $108,454.78, the amount of the cashed checks, but also failed to show any commissions as expense.

The Commissioner assessed a deficiency based on the amount of the omitted checks and added a 50% civil fraud penalty. The taxpayers admitted that the gross receipts had been understated by the amount of the unrecorded cashed checks, but they claimed that all of the money so derived had been used for commissions to the foreign captains and masters. They pointed to the fact that in their returns no deductions had ever been claimed for commissions and insisted that the net effect was the same as if the offsetting items had been reported.

The commissions which the taxpayers claimed to have paid equalled 12.5%, 11.5% and 9.9% of their total gross receipts in the years 1946, 1947 and 1948 respectively. In support of their claims, the taxpayers offered certain invoices bearing notations of commissions paid. These invoices had been kept in folders which Richardson Brothers maintained for each ship with which they did business. Eugene Richardson claimed to have made these notations at the time of the sales, and in this he was supported by the testimony of one of his bookkeepers.

The Tax Court rejected the evidence of the taxpayers "for reasons set out in the Valetti case." In Valetti, where the taxpayer claimed commissions averaging 14.10% of gross sales, the Tax Court emphasized the ease with which cash commission payments may be asserted in fraud of the government's revenue, and for that reason, in the absence of corroboration from the alleged recipients, refused to make a finding that the taxpayer's actual payments so far exceeded the normal 5%. However, the Tax Court estimated and allowed a deduction equalling 7½% of gross business, not limiting itself to the standard 5%.

In the instant case, having rejected the taxpayers' evidence, the Tax Court decided that only 65% of Richardson Brothers' total sales were to foreign ships, to whose captains commissions had to be paid, and that only the standard 5% commission had been paid on those sales. (65% of 5% equals 3.25%) Tax

North Carolina had subsequently made such payments to eye doctors illegal, that fact was held not to justify their exclusion in the earlier tax years.

3. In Fiambolis v. United States, D.C.E.D. S.C.1957, 152 F.Supp. 10, the court held that the payment of commissions by ship chandlers to captains of foreign vessels did not violate public policy as evidenced by a South Carolina statute prohibiting secret gifts to agents. This statute was said to contemplate the intention to corrupt the agent to the injury of his employer. Since the employer not only knew about the commissions to their captains, but actually consented to such payments, they did not constitute a crime or violation of the state's public policy.

deficiencies were then assessed on the difference between the amount of the partnership's unreported income and the allowed deductions for commissions.

The taxpayers argue that in limiting the deductions to 3.25% of gross receipts, the Tax Court erred. They point out that here, when the only evidence as to actual commissions—that presented by Eugene Richardson—was rejected, the court allowed only 3.25%, while in the Valetti case, where the Tax Court also refused to accept the taxpayer's evidence, it allowed commissions of 7.5%. They also insist that there was insufficient basis in the record for the Tax Court's estimate that only 65% of Richardson Brothers' gross sales were made to foreign flag vessels.

■■ While a taxpayer's records are relevant and competent evidence, they are self-serving, and this fact may be considered in determining the weight to be given them. Valetti v. Commissioner, 3 Cir., 1958, 260 F.2d 185; Helvering v. Midland Insurance Co., 1937, 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612. In addition, the records submitted by the taxpayers in this case were not normal accounting ledgers, but consisted of penciled notations by Eugene Richardson on individual invoices and on the ships' folders themselves. The Tax Court cannot be said to be clearly erroneous in refusing to accept this evidence at face value.

■ The Tax Court's allowance to Valetti of deductions equal to 7.5%, which is half again as much as commissions normally paid in the industry, did not bind it to do the same here. Such a determination rests upon the credence the court accords to the evidence submitted by a particular taxpayer. There is no justification for the apellants' insistence that if the Court allowed more than normal commissions in one case it must do so in every case.

■ We have not failed to consider that the evidence upon which the Court based its 65% estimate is not very strong. It was predicated upon an admittedly "offhand" approximation by another Charleston chandler that 65% of the ships coming into that harbor were foreign owned. But the taxpayers offered no evidence to show what percentage of the partnership's sales was to foreign vessels, and without such evidence, the testimony of the other chandler afforded the only basis upon which the court could make its determination. Having rejected the taxpayers' lists of commissions paid, the Tax Court was forced to make an estimate. It did the best it could in the circumstances. Under the Cohan rule, the Tax Court is enjoined to make as close an approximation as it can, but in so doing it may bear heavily if necessary upon the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 2 Cir., 1930, 39 F.2d 540.

In its original computation of deductible commissons, the Tax Court allowed 3.25% of the partnership's total reported sales including, in addition to merchandise sold, fees received for rental of the taxpayers' launches. The taxpayers then filed a motion pointing out that the court had failed to take into consideration commissions on sales previously unrecorded and unreported and with which they were now being charged. The Tax Court agreed that it had erred in failing to allow commissions on the newly included sales, but at the same time it also ruled that amounts received by the partnership for launch rentals should not have been included. Recomputing the commissions, the court adopted a basis of 3.25% of all receipts excluding those for launch rentals.

It is the taxpayers' contention that the exclusion of the launch rentals was error. Launch hire, they argue, is a usual and customary service rendered to ships in stream, and they say that the Commissioner wrote a letter acknowledging that the custom of paying commissions prevailed as to both "goods and services". They point also to the testimony of one witness who referred to launch hire as a service and who said that the invoices

contain charges for both goods and services such as launch hire.

The Commissioner's letter to which the taxpayers refer was written to Paul Richman & Company, Inc. on March 14, 1957. It did not, as they claim, acknowledge that the custom of paying commissions prevails as to both "goods and services." The Commissioner made his ruling that commissions were deductible based upon facts that had been supplied by the taxpayer, Richman. The language, which the taxpayers here claim to be an acknowledgement by the Commissioner, was merely a restatement of the facts contained in the letter from Richman requesting the ruling.

■ It is not enough to say abstractly that launch hire is a service if it is not shown whether in practice the custom of paying commissions applies to such service. Possibly commissions were paid by Richardson Brothers on launch hire, and possibly that is the normal practice in the industry. But we must decide this question on the record before us, and keeping in mind that the burden of proof is on the taxpayer attacking an assessment of deficiency, we are unable to say that the Tax Court clearly erred in its determination.

We conclude that the Tax Court's determination of tax deficiency must be affirmed. While it may not be exact, it results in an allowance to the taxpayers which seems not so unfair as to justify our setting it aside.

## II

■ Different considerations control the imposition of a fraud penalty than apply to the affirmance of a deficiency. In this case the Tax Court sustained the imposition of fraud penalties upon its finding that the partnership's deductible commissions during the taxable years, estimated by the court as $26,444.06 were far below its unrecorded and unreported income of $108,454.78, resulting in a disparity of $82,010.72. The court said:

"The partners must have been aware of the discrepancy and their failure to return the true partnership income. For reasons similar to those stated by us in the Valetti case, supra, we have concluded that as to each of these years a part of the deficiencies is due to fraud with intent to evade tax."

After the Tax Court's decision in the instant cast, the fraud penalties imposed in Valetti were reversed on appeal, Valetti v. Commissioner of Internal Revenue, 3 Cir., 1958, 260 F.2d 185, 188. The appellate court pointed out that unlike the review of a deficiency assessment, where the burden is on the taxpayer to prove by a preponderance of evidence that the Commissioner's determination is incorrect, on the issue of fraud the government bears the burden of proving by clear and convincing evidence that at least part of the deficiency is due to fraud with intent to evade tax. Discussing the burden resting upon the Commissioner, Judge Hastie, for the Court of Appeals said:

"It is not enough that an apparent discrepancy between the large commissions shown by the taxpayer's records and the smaller commissions said to have been paid by other chandlers permitted, though it did not require, an inference of error in the taxpayer's records. This permissive inference was not an adequate base upon which to build a second inference that the inferred error was made with fraudulent intent to evade income taxes, in a situation where this ultimate conclusion had to be established in a clear and convincing way."

With this view of the law, we are in agreement.

The only noteworthy difference between Valetti and this case is that in the former the taxpayer had recorded and reported all gross receipts and claimed deductions in his return for commissions paid, whereas here the taxpayers chose to offset commissions against unreported receipts. The Commissioner asserts that he has sustained his burden here simply by showing that gross income was un-

derstated by $108,454.78. Since the taxpayers did not deny the understatement of gross receipts, and their defense was that they had certain unreported expenses, the Commissioner contends that on the question of fraud penalties, no less than in the determination of the tax assessment, the burden of going forward in establishing the right to the deductions was on the taxpayers.

We cannot agree that the finding of an understatement of gross receipts automatically puts on the taxpayers the obligation to prove the offsetting deductions in order to escape a fraud penalty. Such a contention might have more force in a case where the unreported income and deductions were unrelated or only remotely related. There, the Tax Court might be justified in thinking that the newly asserted deductions were conceived belatedly in an effort to add to the Commissioner's burden. It might reasonably be contended in such a case that the taxpayer should have the burden even on the issue of fraud. We have no occasion to decide this, however, for here the unreported income and the unclaimed deductions are intertwined. We think that the failure to report these two items is not a sufficient ground upon which to distinguish the instant case from Valetti and thus to lessen the burden on the Commissioner. In order for a fraud penalty to be assessed where the unreported items of income and expense are closely related, the Commissioner must prove that at least some unreported net income resulted from the unrecorded transactions. This principle was applied in the Tax Court in H. J. Feinberg & Co., Inc., 9 T.C.M. 776 (1950).

The Tax Court has chosen to tie its decision in the present case to the reasons expressed by it in Valetti; we are of the opinion that its decision in respect to the fraud penalties must be reversed for the reasons stated by the Court of Appeals in that case. We conclude that while the taxpayers have failed to carry their burden in attacking the deficiency assessment, the Commissioner has not met the burden resting upon him to prove that such deficiency resulted from fraud.

The decisions of the Tax Court as to deficiencies are affirmed, but they are reversed as to the fraud penalties, and the cases are remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.