RONALD BROWN AND EUNICE BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 12820-78.
United States Tax Court
T.C. Memo 1980-553; 1980 Tax Ct. Memo LEXIS 33; 41 T.C.M. (CCH) 542; T.C.M. (RIA) 80553; December 15, 1980
*33 Petitioners claimed a deduction under sec. 170, I.R.C. 1954, for alleged contributions to the Church of the Brothers and claimed other alleged expenses were deductible under secs. 164, 165 and 212. Held, petitioners have not substantiated the claimed contributions. Held further, even if contributions were substantiated, the Church of the Brothers was not an organization under sec. 170(c)(2) to which deductible contributions could be made. Held further, petitioners have not substantiated claimed deductions for taxes, interest and tax return preparation. Ronald Brown, pro se. R. Alan Lockyear, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1976 in the amount of $ 3,566.08. The issues are (1) whether the petitioners adequately substantiated their claimed contribution deductions; (2) if the claims were adequately substantiated, is the Church of the Brothers a separate and distinct entity from the Universal Life Church, Inc., of Modesto, California and therefore itself required to meet the provisions set out in section 170(c), I.R.C. of 1954, to render *34 the contribution deductible under section 170(a); (3) whether the petitioners in fact proved that the Church of the Brothers complied with the requirements of section 170(c); and (4) whether the petitioners have substantiated the contested itemized deductions for taxes, interest, and miscellaneous expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Ronald and Eunice Brown, husband and wife, resided in Sandy, Utah, at the time they filed their petition herein. Petitioners timely filed a joint Federal income tax return for the calendar year 1976 with the Internal Revenue Service Center, Ogden, Utah. During the taxable year in issue, Ronald Brown was employed as an inside wireman and Eunice Brown was a housewife. In the statutory notice of deficiency dated August 17, 1978, respondent disallowed all $ 1,578 claimed by the petitioners as tax expense. Respondent also disallowed all $ 1,097 claimed by petitioners as a deduction for interest paid, all $ 13,190 claimed by petitioners as charitable contributions, and all $ 725 claimed *35 by petitioners as miscellaneous expenses. Respondent allowed a $ 2,800 standard deduction that was not claimed by petitioners on their return as filed. Of the petitioners' claim of $ 1,578 for tax expenses, the parties have stipulated that petitioners were able to verify in full the total expenditure of $ 923 for state and local income taxes, real estate taxes, and state and local gasoline taxes. Of the $ 430 claimed for general sales taxes, petitioners verified $ 422 to respondent's satisfaction. Petitioners have not verified the expenditure of $ 130 for personal property taxes and $ 95 for automobile sales tax. On their return, petitioners claimed $ 1,097 for interest expense. Petitioners were able to verify in full the expenditure of $ 603 as interest paid during the taxable year on their home mortgage. Further, petitioners erred in claiming only $ 80 of interest expense paid to Murray First Thrift. The total amount of interest verified by petitioners as paid to Murray First Thrift was $ 1,985.67. Petitioners were not able to verify the claimed payment of interest in the amount of $ 80 to Sentry Finance, and $ 336 to Beneficial Finance. Of the $ 725 claimed by petitioners *36 for miscellaneous deductions, the only expense that petitioners have verified was an expenditure of $ 25 for tax preparation. Petitioners have not verified the following items claimed as miscellaneous deductions on schedule A of their 1976 Federal income tax return: Union Dues
$ 460.00
Job-Required Tools
140.00
Electrician's License
10.00
Safety Equipment
78.00
Building Trades
12.00
Total $ 700.00
Finally, petitioners' claim of $ 13,190 for contributions is made up of: "Cash contributions for which you
(petitioners) have receipts,
cancelled checks, or other
written evidence."
$ 12,865.00
"Other cash contributions"
325.00
Total
$ 13,190.00
As evidence of their contributions, petitioners introduced a document entitled "Donation Receipt." The document states that the Church of the Brothers, a Congregation of Universal Life Church, Inc., received from Ronald Brown as donor the amount of $ 12,865.00 for a "goodwill offering." The document is dated "2-1-1976 thru 12-29-1976," and is signed by "Rev. Ronald D. Brown, D.D." No other evidence of a donation in the amount of $ 12,865 to the Church of the Brothers, such as cancelled checks, was introduced. Petitioners obtained a charter to form the Church of the *37 Brothers from the Universal Life Church on February 1, 1976. Ronald Brown contends that the size of his congregation ranged from one to fifteen. The petitioners' home was used as the headquarters. There was no formal church edifice in which the Church of the Brothers was housed. In fact, no regular services were scheduled. Ronald Brown claims to have conducted services all over the United States, wherever he happened to be. In fact, most of the religious services took place while Ronald Brown was working on various jobs as an inside wireman. Officers of the petitioners' Church included Ronald Brown as minister of the Church of the Brothers, Eunice Brown as secretary-treasurer of the Church, and petitioner's brother as a director of the board. Money contributed to the Church was used to pay for supplies and expenses, including papers and materials from the Universal Life Church. In addition, a minimum of $ 2 per month was paid to the Universal Life Church for recordkeeping. Petitioner Ronald Brown never underwent any formal training, such as attendance at a seminary, to become a minister of the Church of the Brothers. His credentials were received through the mail in exchange *38 for payments of varying amounts of money. First, he received a document entitled "Universal Life Church, Inc., Credentials of Minister" on February 1, 1976 which certified that Ronald Brown had been ordained by the Universal Life Church, Inc. Second, petitioner was awarded an honorary "Doctor of Divinity" degree in April 1977 by the Universal Life Church, Inc. This degree was received through the mail at a cost of $ 20. Third, for $ 15, petitioner Ronald Brown was sent a "Doctor of Metaphysics" drgree in April 1977 from the Universal Life Church, Inc. Fourth, petitioner received a certificate of "Doctor of Religious Science" from the Universal Life Church, Inc., in June 1977 at a cost of $ 40. Fifth, petitioner received a certificate acknowledging his receipt of the degree of "Doctor of Religious Humanities" for satisfactory completion of a course in American Church Law and Parliamentary Law. He received this degree in April 1977 at a cost of $ 40. Finally, petitioner was awarded a certificate by the Universal Life Church, Inc., declaring that "Ronald D. Brown has been named SAINT of the Universal Life Church this day of July 15, 1977." There is no evidence of any special *39 achievements to support this certification. The Church of the Brothers has never submitted an application for tax exempt status to the Internal Revenue Service. The Federal tax exemption number found on the receipt that Ronald Brown prepared and signed for himself to evidence his donation to the Church of the Brothers is the exemption number of the Universal Life Church of Modesto, Inc., of Modesto, California. While the Universal Life Church has been recognized by the Internal Revenue Service as a religious organization that is exempt from tax under section 501(c)(3), the Church of the Brothers is not recognized in IRS Publication No. 78 as an exempt organization and has never been granted exempt status. Furthermore, the Church of the Brothers has never been incorporated nor ever filed for exempt status in the State of Utah. During the year in issue, the Church of the Brothers had a local checking account with the Commercial Security Bank in Sandy, Utah over which petitioner Eunice Brown had signature authority. Petitioners neither presented the records of this checking account at trial nor attempted to obtain those records from the bank at any time before trial. Nor did they *40 inform respondent prior to trial that such checking account existed, although respondent did attempt to obtain such information both informally and through a formal request for production of documents. Further, in 1976, petitioners maintained a personal checking account at the Zion's First National Bank. At trial, petitioners did not present any cancelled checks from their personal checking account. Ronald Brown claimed that he did not possess or control the cancelled checks and that too much time had passed to get copies of such checks from Zion's Bank, and that documents supporting his donation to the Church were in the hands of the Universal Life Church in Modesto, California. As he was not affiliated with that organization anymore, Ronald Brown made no effort to obtain the records that were being stored with the Universal Life Church.
OPINION The issue for our decision is whether petitioners adequately substantiated payments alleged to have been made for taxes, interest and miscellaneous expenses, and for contributions under section 170(a)[1] to a religious organization that is purported to be an exempt organization under section 170(c). [2] *42 Respondent takes the position that petitioners *41 have not substantiated a number of the expenditures for which deductions were claimed. Furthermore, even if a contribution to the Church of the Brothers were found to have been substantiated, it would not be a deductible contribution under section 170(a) because the Church of the Brothers is not an exempt organization that meets the requirements of section 170(c)(2). Petitioners, on the other hand, claim that the Church of the Brothers is a congregation of the Universal Life Church which has been recognized as an exempt organization. Ronald Brown contends that he has introduced all of the records that he possesses, and that other supporting documents were in the possession of the Universal Life Church, Inc., of Modesto, California. Petitioners have the burden to prove that they are entitled to greater deductions for taxes, interest, miscellaneous expenses and contributions than the amount allowed by respondent. Welch v. Hevering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. At the outset we note that petitioners Ronald and Eunice Brown occupied positions of leadership in the Church of the Brothers. "While this domination * * * [by petitioners of a religious group] alone may not necessarily disqualify it for exemption, it provides an obvious opportunity for abuse of the claimed tax-exempt status. It calls for open and candid disclosure of all facts bearing upon petitioner's organization, operations, and finances * * *." Bubbling Well Church v. Commissioner, 74 T.C. 531, 535 (1980). *43 On their 1976 income tax return, petitioners claimed a deduction of $ 13,190 for contributions, composed of $ 12,865 to the Church of the Brothers and $ 325 in "other" cash contributions. The only evidence presented by petitioners to substantiate the claimed deductions was a donation receipt in the amount of $ 12,865 for a "goodwill offering" to the "Church of the Brothers, A Congregation of the Universal Life Church, Inc." The receipt covered donations purportedly made by petitioner Ronald Brown during the period from February 1, 1976 through December 29, 1976, and was signed by the donor in his capacity as "Rev. Ronald D. Brown, D.D." At trial, petitioner Ronald Brown stated that at least some of the alleged contributions were paid by checks drawn on his personal checking account at the Zion's First National Bank. However, copies of the cancelled checks were never produced either during pre-trial discovery or as evidence at trial. Nor did petitioner attempt to introduce any other verification to support his claim that substantial contributions had been made to the Church of the Brothers. In fact, despite respondent's informal and formal discovery requests for documentary evidence, *44 including cancelled checks, of contributions to the Church of the Brothers, petitioner never even disclosed prior to the trial that alleged contributions were made by check.Therefore, the receipt, alone, was insufficient to prove that any contributions had been made. The receipt, although relevant evidence, was self-serving and in light of the circumstances was insufficient to satisfy petitioners' burden of proof. Cf. Richardson v. Commissioner, 264 F.2d 400, 403 (4th Cir. 1959), and Valetti v. Commissioner, 260 F.2d 185, 187 (3rd Cir. 1958) (a taxpayer's records are relevant and competent evidence but necessarily self-serving, and the Tax Court may consider this fact in determining the weight to be given to such evidence). Furthermore, no evidence was submitted to substantiate the $ 325 of alleged cash contributions. Accordingly, petitioners' entire claimed deduction in the amount of $ 13,190 is disallowed. Moreover, even if we were to find that petitioners adequately had substantiated their claimed contributions, petitioners would not be entitled to a deduction for contributions to the Church of the Brothers. In order for a contribution to be deductible under section 170(a), *45 the organization to which the contribution is made must satisfy the requirements of section 170(c)(2). That section requires that a religious organization show that it is organized and operated exclusively for religious purposes, that no amount inures to the benefit of any private individual, and that it is not involved in attempting to influence legislation or participating in any political campaign on behalf of any candidate. See also section 501(c)(3).In this case, petitioners allege that the Church of the Brothers is a congregation of the Universal Life Church, Inc., of Modesto, California. Because the respondent has recognized the Universal Life Church, inc. of Modesto, California as an exempt organization to which contributions are deductible under section 170, petitioners claim that the Church of the Brothers should thereby be recognized as a section 170(c)(2) exempt organization. [3] *46 In Universal Life Church, Inc. v. United States, 372 F.Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc., was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption. United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC par. 9344). Therefore, the Church of the Brothers is not included in the exemption granted to the Universal Life Church, Inc., and its status as an organization to which deductible contributions can be made must be determined separately. [4] *47 As petitioners have not presented any evidence that the Church of the Brothers complied with the requirements set forth in section 170(c)(2), supra, we cannot find that the contributions, if they actually had been made, would have been deductible donations. Finally, petitioners have failed to substantiate itemized deductions in excess of the following: Tax Expense
State and local income taxes
$ 514.00
Real estate taxes
348.00
State and local gasoline taxes
61.00
General Sales tax
422.00
Substantiated Tax Expense
$ 1,345.00
Interest Expense
Home mortgage
603.00
Murray First Thrift
1,985.67
Substantiated Interest Expense
2,588.67
Miscellaneous Expense
Tax preparation
25.00
Substantiated Miscellaneous
Expense
25.00
Total Substantiated Expense
$ 3,958.67
The burden of proof is on petitioners to rebut the presumption of correctness that attaches to respondent's assertion of the deficiency. We therefore find that petitioners have failed to satisfy their burden. Decision will be entered under Rule 155.
Footnotes
1. Section 170(a) provides for the allowance of deductions for charitable contributions as defined in section 170(c)↩. 2. Section 170(c) defines a charitable contribution to include "a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
3. In Abney v. Commissioner, T.C. Memo 1980-27, the Tax Court considered the status of the Dignity of Man Church, a chartered organization of the Universal Life Church. The status of the Dignity of Man Church was similar to that of the Church of the Brothers in the instant case. In Abney, the Court concluded that the Dignity of Man Church was organized for the personal inurement of petitioners therein, and therefore, did not qualify as an organization under section 170(c)(2) to which deductible contributions could be made under section 170(a)↩.
4. Section 508(c)(1) exempts churches from the mandatory requirement of filing an application for exemption. But when the Commissioner determines that an organization is not entitled to exemption as a church, the organization or its contributors must still prove its right to an exemption. Sec. 1.508-1(a)(3),(4), Income Tax Regs.↩